FRANKLIN WRIGHT v. LORINDA WRIGHT.

*Divorce—Desertion.*

Where, after living peaceably with her husband for 35 years, a
    wife left her home and went to California to see a married
    daughter, from whom she had been separated for some years,
    after which no correspondence passed between the husband and
    wife, and he, while professing a desire to keep his family
    together, made no effort to induce his wife to return, his bill
    for divorce on the ground of desertion is properly dismissed.

Appeal from Lenawee. (Lane, J.) Argued May 2, 1890. Decided May 9, 1890.

Bill for divorce on the ground of desertion. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*J. W. Helme, Jr.,* for complainant.

LONG, J. Complainant filed his bill for divorce in the Lenawee circuit court, in chancery. On the hearing in the court below, the court dismissed his bill, and he appeals.

It is claimed by the bill that the parties were married in the year 1850, in Jackson, this State, and lived and cohabited together as husband and wife from that time

until August 15, 1886. There was a son and daughter, issue of the marriage, both of whom are of age. The bill states as the ground for divorce as follows:

" And your orator further shows unto the court that the said Lorinda Wright, disregarding the solemnity of her marriage vow, cruelly and wantonly deserted your orator on or about August 15, 1886, and without any just cause or provocation; that said defendant left this complainant without ever informing him that she was going away, and she has never been back; that he has never heard from defendant, but he is informed by persons that have seen her there that she is now residing in the state of California, and he verily believes that she is still in said state."

An affidavit of non-residence was made, and the usual order of publication entered and published. An affidavit of regularity was filed, and an order entered taking the bill as confessed. The proceedings all appear to be regular. Deposition of witnesses was taken before a commissioner, and reported to the court, from which it appears that for more than 25 years the parties lived together in perfect harmony, treating each other in the most kindly manner, even up to the time of the departure of the defendant for California, in August, 1886. No witness gives, or pretends to give, any reason for her going; and all that is stated by them is that—

" She deserted the complainant and went to California, and has never come back."

On the hearing the complainant was examined in his own behalf in open court. He was asked by his counsel to state the circumstances of the defendant's going away, and replied:

" Well, I do not know anything about her going away. She never said anything to me about it at all. The neighbors told me my wife was going to California. I told them she had said nothing about it. They said she was going. One heard she was going to see her daughter.

I do not know whether she was or not. She never said anything to me about it, or how long she was going to stay. I told them I did not know anything about it at all. She went off when I was up on the other road, cutting brush. When I got back, she was gone."

It appears from the further examination of the complainant that his daughter, who was married, had been residing in California about eight years; that the son had remained at home until he was of age, when he and his mother, the defendant, went to California,—she going in August, 1886, and the son about two months after his mother. When complainant learned from the neighbors that they were going, he said nothing to his wife of what he had heard. The son took his mother to the depot, and assisted her to go; and from that time the parties have had no correspondence, and only heard from each other through the children. The complainant himself testifies that they never had one word of trouble, but that she told the neighbors that she was going, and that, if she could have her choice to go to California or to go to Heaven, she would go to California; that "she went off the way she did, and I thought I would not trouble myself about it." On an examination by the court, the following appeared:

"*By the Court.* I do not understand your testimony at all when you say you are interested in your family, and want to keep them together. Yet you seem to have done nothing.

"*A.* How could I keep them together, if they wanted to go? I do not think they are bound to stay with me, if they want to go. My son is a married man. He is free to go where he is a mind to. His time is out.

"*The Court.* It seems to me a little unnatural that everything should be pleasant and nice, and your wife pack up and go off, and you never take any steps to find out why it was she desired to leave you.

"*A.* I can bring lots of witnesses that have worked for me for years, and they never saw any trouble. In fact, there never was any trouble.

" *The Court.* Do you think your wife would come back if you wrote her a nice letter, and told her how much you liked her?

" *A.* I do not hardly think she would.

" *The Court.* Supposing you should go there. Do you suppose she would come back with you?

" *A.* I presume, if I should go for her, she would come back; but it would be a good while before I would go."

How. Stat. § 6228, provides that a divorce from the bonds of matrimony may be decreed when either party shall desert the other for a term of two years. It was said by this Court in *Porritt v. Porritt*, 18 Mich. 420, that the separation required to constitute the offense must be, and continue to be, for the period named, a voluntary breaking off of matrimonial cohabitation by one party against the will of the other, and under circumstances which the law does not consider sufficient to justify it.

It is apparent from this record that the defendant was anxious to see her only daughter, who had been in California for several years, and arranged to go. Her mother heart yearned for the daughter. Her husband was made of sterner stuff, and did not look upon it favorably. He said nothing, though he knew she was going. He did not bid her good-bye, and has never written her since. There never had been any trouble, though they had lived together more than 35 years, and he claims now .to have great regard for her and his family. His will is, however, unbending. He will not write, and will not go to her. He has never attempted any reconciliation, and never invited her to return. The least effort on his part, or a little unbending towards her, evidently, would bring her to his home. This he does not choose to do. We are satisfied that the court below properly refused a decree of divorce. The circumstances of the defendant's

going away, as detailed by the complainant himself, and the conduct of the complainant on that occasion, and subsequently, we think, do not bring the case within the provisions of the statute.

The decree dismissing complainant's bill will be affirmed

The other Justices concurred.